*In re* LUIS E. COLÓN RAMERY.

*Número:* MC-89-15          *Resuelto:* 30 de junio de 1995

*Sergio Domínguez Wolff, Silvestre M. Miranda y Nilda M. Navarro, de Ledesma, Palou & Miranda; Jorge Luis Guerrero Calderón, Nelson Biaggi García, Jorge E. Galva, An-*

*tonio Escudero Viera* y *Noel S. González Miranda*, de *Mc-Connell Valdés*; *Carlos R. Noriega Rodríguez* y *Antonio Arraiza Miranda*, del *Colegio de Abogados de Puerto Rico*, todos en calidad de *amicii curiae*.

PER CURIAM:
(En reconsideración)

A solicitud de la Asociación de Notarios de Puerto Rico, así como de otros abogados que comparecieron en el pleito de epígrafe como interventores y *amici curiae*, reconsideramos la opinión emitida en el caso de autos. Luego de reevaluar las cuestiones planteadas a la luz de la ley y jurisprudencia aplicables, consideramos prudente variar la norma general impuesta en el caso de epígrafe.

I

El 8 de junio de 1993 emitimos una opinión y sentencia en el caso de autos en la cual impusimos una norma prohibitiva de carácter prospectivo a los efectos de que ningún abogado-notario podría representar a una de las partes otorgantes de un documento autorizado por éste en un pleito posterior para exigir las contraprestaciones a las cuales se obligó la otra parte en el documento. Determinamos que un "abogado-notario que reclama judicialmente en representación de una de las partes otorgantes de un documento, para exigir la contraprestación a la que se obligó la otra parte en el documento, da la falsa impresión de que siempre estuvo parcializado con la parte en representación de la cual reclama". *In re Colón Ramery*, 133 D.P.R. 555, 567 (1993). Así, la norma impuesta tuvo el propósito de evitar dicha "apariencia de conducta profesional impropia". Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Basamos, además, la imposición de dicha norma en el hecho de que "el Canon 22 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone que un abogado debe evitar testificar en beneficio o apoyo de su cliente y renunciar [a] su

representación cuando adviene en conocimiento de que puede ser llamado a declarar en su contra. En toda acción en la que un instrumento notarial sea el objeto de la controversia, el notario siempre es testigo silente". *In re Colón Ramery*, supra, pág. 568.

Asimismo, extendimos dicha prohibición a los socios y asociados de bufetes pluralizados a base de que

> [e]n términos generales, somos de opinión que existe un deber deontológico general implícito en una sociedad de abogados, que recae sobre sus socios, de velar y determinar que la práctica y métodos seguidos por todos en la sociedad estén a tono con el Código de Ética. Creemos que esta obligación no puede quedar diluida o inmersa en la burocracia oficinesca o pluralidad de abogados. Por ende, no podemos compartir la tesis de que el abogado, cuando se desempeña en una sociedad jurídica —en su condición de socio o como empleado— puede actuar aisladamente en una especie de comportamiento sellado, ajeno y alejado de los asuntos generales profesionales y notariales en que se desenvuelve la asociación. *In re Lavastida et al.*, 109 D.P.R. 45, 92 (1979), opinión concurrente y disidente del Juez Asociado Señor Negrón García.

Luego de reevaluar las cuestiones planteadas en el caso a la luz de las extensas y bien fundamentadas comparecencias de los interventores y *amici curiae*, la ley y la jurisprudencia aplicables, entendemos que es necesario emitir los pronunciamientos siguientes. Veamos.

## II

■ En primer término, reafirmamos que un notario que autorice un instrumento público estará impedido de representar posteriormente como abogado a cualquiera de los otorgantes, en una litigación contenciosa, contra el otro o los otros otorgantes para reclamar judicialmente las contraprestaciones contenidas en el instrumento público.

■ Esta norma es una consecuencia lógica de nuestra decisión en *B. & L., Inc. v. P.R. Cast. Steel Corp.*, 114 D.P.R.

808 (1983). Allí determinamos que un abogado estaba impedido de notarizar documentos de su cliente que estaban relacionados con un pleito en el cual éste lo representaba y que estaba pendiente ante los tribunales. Tal prohibición respondió a que

> [e]xiste tan manifiesta identidad entre abogado y cliente en lo que respecta al relato de los hechos sobre los cuales se pide remedio en la acción civil y tiene el abogado tanta libertad para escoger el lenguaje en qu[é] narrar los hechos a él informados por el cliente, que en cualquier pleito —en el desarrollo de la controversia— puede surgir discrepancia entre abogado y cliente respecto al contenido de la alegación jurada y derivar en procedimientos lesivos a la fe pública de que es custodio el notario. *B. & L., Inc. v. P.R. Cast. Steel Corp.*, supra, pág. 811. Véase, además, E. Otero Silva, *Mesa redonda: función dual de la abogacía y la notaría; la jurisdicción voluntaria en sede notarial*, Ponencia presentada en la XXXI Conferencia de la Federación Interamericana de Abogados (1994).

■  Como bien se desprende de la anterior cita, la justificación básica de dicha norma fue la protección de la fe pública de la cual el notario es custodio. A tono con dicha motivación, es importante recordar que la fe pública " 'como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad ...". *In re Vargas Hernández*, 135 D.P.R. 603, 608 (1994), citando a *In re González González*, 119 D.P.R. 496, 499 (1987). Dicho esquema parte de la base de que "la cualidad medular que lo distingue [al Notario] del abogado es su imparcialidad, y en tal condición debe actuar en un plano superior a las partes". Ley Notarial de Puerto Rico, Exposición de Motivos de la Ley Núm. 75 de 2 de julio de 1987, Leyes de Puerto Rico 262–263 (4 L.P.R.A. sec. 2002 *et seq.*).

Es como medida protectora de dicha imparcialidad que se justifica la norma que hoy reafirmamos. La práctica de la profesión de abogado es incompatible con la práctica de la notaría cuando ambas intervenciones del abogado-notario traten el mismo asunto. La expectativa del aboga-

do-notario de, una vez otorgado el documento en el cual actuó como notario, activar una relación de abogado-cliente con uno de los otorgantes o de mantener una relación de ese tipo que existía previo al otorgamiento del documento, trastoca la presunción de imparcialidad que protege toda labor del notario y empaña la fe pública de la cual éste es custodio.

En ese contexto, la línea divisoria entre la consejería como parte de una relación abogado-cliente y la consejería legal que, como notario imparcial conocedor de la Ley Notarial de Puerto Rico permite al notario otorgar documentos, es tan difícil de reconocer que raya en la inexistencia. Fue con dicha dificultad en mente que trazamos la línea e impusimos la prohibición que hoy reafirmamos.

■ La imparcialidad del notario no puede limitarse al momento mismo del otorgamiento y de brindar las advertencias. Ésta debe estar presente también durante todos los procesos conducentes y posteriores a dicho otorgamiento. Sólo así mantendremos intacta la fe pública de la cual el notario es custodio.

### III

■ En segundo lugar, aclaramos que la prohibición anteriormente expuesta no incluye la función dual de abogado-notario en las acciones *ex parte*, a menos que esté expresamente prohibida por ley o doctrina jurisprudencial. Dicha exclusión, con respecto a la aplicabilidad de la norma prohibitiva que hoy reafirmamos, es una consecuencia lógica del hecho de que, por su carácter no contencioso, en dichos procedimientos no existe la apariencia de parcialidad impropia a la cual aludimos anteriormente. Recordemos que los procedimientos *ex parte* tienen como propósito dar validez jurídica a actos y manifestaciones consensuales de la voluntad privada. E. Escobar De la Riva, *Tratado de Derecho Notarial*, Ed. Marfil, S.A., 1957, págs. 27–28, se-

gún citado en *B. & L., Inc. v. P.R. Cast. Steel Corp.*, supra, pág. 812 esc. 3.

■ La norma antes dispuesta tampoco incluye las declaraciones de autenticidad de las firmas. Éstas no constituyen documentos públicos. Art. 56 de la Ley Notarial de 1987 (4 L.P.R.A. sec. 2091). En ellas el notario se limita a legitimar las firmas pero "no asume responsabilidad alguna por el contenido del documento privado de cuyas firmas legitime". Íd.

## IV

■ Ahora bien, contrario a lo que dispusimos en la opinión original en el caso de autos, la prohibición que hoy sostenemos no es extensiva a los socios o asociados del bufete del notario autorizante. Este curso decisorio responde a que, aun cuando ciertamente "somos de opinión que existe un deber deontológico general implícito en una sociedad de abogados, que recae sobre sus socios de velar y determinar que la práctica y métodos seguidos por todos en la sociedad estén a tono con el Código de Ética", *In re Lavastida et al.*, supra, pág. 92, hemos resuelto que la responsabilidad del notario es personalísima e indisoluble. *In re Meléndez Pérez*, 104 D.P.R. 770, 777 (1976); *B. & L., Inc. v. P.R. Cast Steel Corp.*, supra; E. Martínez Moya, *Derecho notarial y registral inmobiliario, análisis de jurisprudencia 1993–94*, 64 Rev. Jur. U.P.R. 873 (1995).

Sin embargo, los socios o asociados de un notario en un bufete pluralizado *no* pueden representar a una parte en un litigio relacionado con un documento otorgado por dicho notario si la actuación de éste último como notario o cualquier acuerdo plasmado u omitido en el documento fuese cuestionada. Es decir, que ni el abogado-notario autorizante ni sus socios o asociados en bufetes pluralizados podrán representar a ninguno de lo otorgantes del documento autorizado por dicho abogado-notario cuando, como parte del litigio contencioso, se impugna la validez de al-

guno de los acuerdos que surgen del documento autorizado o se alega la existencia de otros acuerdos relativos al mismo asunto que fueron omitidos en dicha escritura matriz.

La extensión de dicha prohibición a los socios o asociados de bufetes pluralizados responde al hecho de que éstos, como parte de la sociedad de abogados, podrían estar expuestos a una responsabilidad financiera por los actos del socio-notario. *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33, 49 (1982).

Finalmente, el notario y sus socios o asociados en bufetes pluralizados deben además decidir, dentro de su responsabilidad profesional, cuándo deben abstenerse de actuar en los casos en que, por sus particulares circunstancias, su actuación podría generar un potencial de conflicto o la apariencia de conducta impropia.

## V

Estos pronunciamientos tienen un carácter prospectivo y, por ende, afectan únicamente a aquellos casos que se iniciaron en los tribunales a partir de la fecha cuando se certifique la opinión y sentencia de esta Curia. Además, aquellos pronunciamientos expuestos en *In re Cancio Sifre*, 106 D.P.R. 386 (1977), que sean incompatibles con lo aquí resuelto, quedan por la presente expresamente revocados.

*Se dictará la sentencia correspondiente.*

El Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton están conformes con la totalidad de la opinión *per curiam*. El Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón están de acuerdo con las Partes I, II, III y V, pero disienten de la Parte IV. Además, el Juez Asociado Señor

Negrón García hizo constar que disintió de la Parte IV "por los fundamentos expuestos en su opinión de conformidad de 8 de junio de 1993. Reitera que a un socio le está vedado violar los cánones por medios indirectos o mediante el empleo de terceros'. Por ende, no albergamos duda de que la norma es extensiva a los socios o abogados de un bufete pluralizado u otra agrupación de abogados". Los Jueces Asociados Señores Alonso Alonso y Fuster Berlingeri están conformes con las Partes I, III, IV y V, pero disintieron sin opinión de la Parte II. El Juez Asociado Señor Rebollo López no intervino.